THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

RECEIVED
JUN 2 6 2026
CHAMBERS OF KIMBA M. WOOD
U.S.D.J.-S.D.N.Y.

UNITED STATES OF AMERICA,  )
                           )
                           )
                           )
          v.               )          Case No.:  1:16-cr-00311-KMW
                           )
                           )
RASHOD LEWIS               )
                           )

PETITION FOR COMPASSIONATE RELEASE PURSUANT TO 18 U.S.C.
SECTION 3582(c)(1)(A)

NOW COMES, Petitioner, Rashod Lewis, in Pro se capacity, seeking from this Honorable Court, compassionate release, in the form of a reduction of his sentence pursuant to 18 U.S.C. § 3582(c)(1)(A), and avers the following in support:

BACKGROUND

Petitioner was originally charged with a six count indictment charging as; Count One (Narcotics conspiracy) as defined in 21 U.S.C. 841(a)(1), Count Two (Robbery conspiracy) as defined in 18 U.S.C. 1951(b)(1), Count Three (Robbery) as defined in 18 U.S.C. 1951(b)(1), Count Four (Murder during and in relation to a drug-trafficking crime and crime of violence) as defined in 18 U.S.C. 924(j) & 2, Count Six (Possession of a firearm) as defined in 18 U.S.C. 924(c)(1)(A)(iii) & 2.

On June 8, 2017, Petitioner pled guilty to Count Six of the indictment pursuant to a Rule 11 plea agreement, and on October 30, 2017, the District Court sentenced Petitioner to 360 months imprisonment, and five years super-

1

vised release. Petitioner filed a timely notice of appeal and pursued with his direct appeal to the Second Circuit Court of Appeals challenging only the condition of supervised release...that appeal was denied on August 23, 2018. United States v. Lewis 735 Fed. APPX 28; 2018 U.S. APP. LEXIS 24055 (2d Cir. 2018). Petitioner subsequently filed a petition pursuant to 28 U.S.C. 2255 raising a claim that this conviction and sentence for the 924(c)(1)(A) (iii) & 2 offense was in violation of United States v. Davis, 139 S.Ct. 2319, 204 L. ed 2d 757 (2019), which held that section 924(c)(3)(B)-- the Residual Clause, is unconstitutionally vague in describing predicate acts for 924(c) offenses.

On April 27, 2021, the District Court denied the motion pursuant to 28 U.S.C. 2255 as well as denied a C.O.A. Petitioner timely filed a petition for Certificate of Appealability to the Second Circuit Court of Appeals which was denied on December 29, 2021. Petitioner then filed a Petition for Writ of Certiorari to the The United States Supreme Court, which was denied on June 6, 2022. Petitioner subsequently filed a Petition to the District Court pursuant to Federal Rules of Civil Procedure 60(b)(6) that is concurrently Pending.

### STANDARD OF REVIEW

Unless a statutory exception applies, the Court may not modify a term of imprisonment once it has been imposed. 18 U.S.C. 3582(c)(1)(A) provides one such exception often referred to as compassionate release. Musa v. United States, 502 F.Supp. 3d 803, 809 (S.D.N.Y. 2020). Prior to the First Step Act 18 U.S.C. 3582(c)(1)(A) gave the B.O.P. exclusive poser over all avenues of compassionate release. United States v. Brooker, 976 F.3d 228, 231 (2d Cir. 2020). With  passage of the Act, the section was amended to allow defendants to bring motions themselves and to give courts the power to grant such motions,

after considering the factors set forth in 18 U.S.C. 3553(a) to the extent that they are applicable, so long as extraordinary and compelling reasons warrant such a reduction... and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission. 18 U.S.C. 3582(c)(1)(A)(i).

In amending Seciton 3582(c)(1)(A)(i), Congress freed district courts to consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before them in such motions. Brooker 976 F.3d at 237; United States v. Romano, ____U.S. App. LEXIS____(2d Cir. Feb. 8, 2022) (A district court may consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before them in  motions for compassionate release) The district courts have broad discretion in determining what facts constitute extraordinary and compelling reasons justifying release and are not limited  to those circumstances specified in the Sentencing Guidelines. United States v. Castillo,  03-979(KMW), 04-cr-408(KMW), 2023 U.S. Dist. LEXIS 33463, 2023 WL 2262881, at 2 (S.D.N.Y. Feb. 28, 2023)

The only statutory limitation on what a court may consider to be extraordinary and compelling is that rehabilitation...alone shall not be considered as an extraordinary and compelling reason. id. at 237-238 (quoting 28 U.S.C. 994(t))

Under the statute, a defendant may bring a motion for compassion release upon fully exhausting all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's  behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier. 18 U.S.C. 3582(c)(1)(A). United States v. Watts, 2023 U.S. Dist. LEXIS 1215 (E.D.N.Y. 2023) The statute does not necessarily require the moving defendant to fully litigate his claim before the

3

agency. United States v. Haney, 454 F. Supp. 3d 316, 2020 WL 1821988, at 3 (S.D.N.Y. 2020) The defendant bears the burden of showing that he is entitled to compassionate release. United States v. Martinez, 2021 U.S. Dist. LEXIS 145085, 2021 WL 3374530, at 2 (S.D.N.Y. Aug. 2, 2021)

## SENTENCE DISPARITY AMONG CO-DEFENDANTS

In Petitioner's case there is a drastic disparity between his co-defendants Kenneth Rudge, and their sentences pertaining to Count One of the indictment, and Count one of the Superseding Information...Where allegations are essentially the same as they relate to the charged drug conspiracy. Accumulative to the disparity is the characteristic of the roles leading to the charged events.

It's alleged that Rudge was a leader of a group of individuals, known as "YNR", that distributed heroin and crack cocaine in Bronx, NY. In the course of his involvement with YNR, Rudge engaged in robberies and gun violence, culminating in Rudge's murder of Nelson Dubon during a robbery in January 21, 2016 in which Petitioner participated in.

Rudge waived indictment, pleading guilty and agreed to proceed on a superseding information charging him with (1) discharging a firearm in furtherance of narcotics trafficking ( Count One), and discharging a firearm in connection with Hobbs Act robbery (Count Two), both in violation of 18 U.S.C. 924(c)(1)(A)(iii). Count Two also included a charge pursuant to 924(c)(1)(C)(i), which provides and enhanced mandatory minimum penalty for multiple violations of 924(c).

Statutory Penalties:  924(c)(1)(A)(iii) not less than 10 years;

924(c)(1)(C)(i) not less than 25 years;

Notable, during a colloquy when Rudge was asked to describe his offense conduct he stated, "and Count Two, on January 21, 2016, during a robbery att-

4

empt, I possessed a gun and discharged it, and unfortunately, a bullet killed Nelson Dubon."

On July 23, 2018, the Court imposed the mandatory sentence of 420 months imprisonment as to his charging offenses of Counts One and Two of the Superseding Information. Essentially 10 years as to ,Count One, use of the firearm in connection of narcotics trafficking, and 25 years as to, Count Two, use of the firearm in connection with the Hobbs Act robbery resulting in death. In Petitioner's case, as relevant here, he plead guilty only to Count Six of the indictment which charged; during and in relation to a drug trafficking crime charged in Count One, did possess, use, and carry firearms and did aid and abet the use, carrying, and possession of firearms, several of which were discharged, as defined in 18 U.S.C. 924(c)(1)(A)(iii) & 2. Count Six only referenced Count One as the basis for the conduct of the firearm offense...which Count One states, "narcotics conspiracy- distribution and possession with intent to distribute a controlled substance in violation of 21 U.S.C. 841(a)(1)." On October 30, 2017, the Court sentenced Petitioner to 360 months as to Count Six- 924(c)(1)(A)(iii).

Petitioner's sentence for his conduct alleged to be the basis of Count One is a drastic disparity between that of his co-defendant, Rudge,  who actually plead guilty to  a second offense in the Superseding Information, of the same nature listed as Count One of the indictment, which he received a 10 year sentence. Petitioner is not convicted of Count One of the indictment, he was convicted as to Count Six that refereced that it was based upon actions stemmming from Count One that led to the theory of events that support the 924(c)(1)(A)(iii) offense. In this case, Petitioner's co-defendant, Rudge, played a leadership role, plead guilty to two counts of the charging offense, one of which incurred a mandatory minimum of 10 years, and the second a 25

5

year minimum, both of which he received. By contrast, Petitioner was a subordinate, pled guilty to one count that referenced the same nature of the offense that Rudge received the mandatory minimum of 10 years, but Petitoner received 30 years.

There is a clear disparity in  the sentence imposed against Petitioner opposed to his co-defendants. The courts have held that they may consider disparities among co-defendants sentences as a ground for demonstrating extraordinary and compelling circumstances for co-defendants with similar conduct as grounds for compassionate release. United States v. Lugo, 2022 U.S. Dist. LEXIS 43458, 2022 WL 73253, at 8 ( E.D.N.Y. Mar. 11, 2022); United States v. Seabrook, 16-cr-467(AKH), 2023 U.S. Dist. LEXIS  30691, 2023 WL 22 07585, at 3-4 (S.D.N.Y. Feb. 23, 2023); United States v. Ramsay 538 F.Supp. 3d 407, 428 (S.D.N.Y. 2021) (citing among other factors, sentencing disparities with co-defendants as a basis for a sentence reduction); United States v. Haynes, 456 F. Supp. 3d 496, 2020 U.S.Dist. LEXIS 71021 (E.D.N.Y. 2020); United States v. Ballard, 552 F. Supp. 461, 2021 U.S. Dist. LEXIS 144463 (S.D.N.Y. 2021); United States v. Cannon, No. 4:95-cr-30 (CDL), 2025 WL 326065 (M.D. Ga. Jan. 29, 2025)

<u>REHABILITATION AND PROGRAMMING</u>

The courts have held that rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason. 28 U.S.C. 924(t). Rehabilitation may be considered in combination with other factors in determining whether there are extraordinary and compelling reasons for a sentence reduction. United States v. Torres, 464 F. Supp. 3d 651,661 (S.D.N.Y. 2020); United States v. Millian, 2020 U.S. Dist. LEXIS 59955 (S.D.N.Y. 2020) (the court holds that rehabilitiation is relevant to whether there are extraordinary and compelling reasons for a sentence reduction); Pepper v. United

States, 562 U.S. 476, 491, 131 S. Ct. 1229, 179 L. ed. 2d 146 (2011) (evidence of post rehabilitation may be highly relevant to several of the 3553(a) factors)

In Petitioner's case he has completed an array of programs through his continued efforts of rehabilitation to return to society productively; as listed, (1) Victim Impact; (2) Anger Management; (3) Managing Your Stress; (4) Grammar; (5) Electoral College; (6) GP Vermicomposting; (7) GP Etiquette; (8) Writing a Formal Correspondence; (9) Personal Growth; (10) Money Management; (11) Selecting a Major and Career;(12) Branches of Government; (13) Volleyball; (14) Investment Choices; (15) Income Annuities;(16) Personality Traits; (17) GED; (18) Life Lessons; (19) Communication Skills; (20) Showing Empathy; 921) Welcome to the World of Substitute; (22) How to Manage Debt; (23) Problem Solving Strategies; (24) Field Hockey; (25) Adolescent Development; (26) Keeping in touch with Others; (27) Can Food Change Your Mood; (28) COVID-19 Information Class; (29) Community Supervision; (30) Why Blood Sugar Matters; (31) The Heart of the Matter; (32) Finding Employment; (33) How to Manage Credit; (34) Family and Money; (35) Finding Employment Seminar; (36) Community Supervision USPO; (37) Health Promotion; (38) Budget Management Seminar; (39) Personal Growth Seminar; (40) Personal Planning Seminar; (41) Matter of Balance.

<u>EXTRAORDINARY COMMENDABLE ACTION</u>

Petitioner-Lewis, and a few other inmates saved a female correctional officer - Officer Ously  - from an assault or death by a deranged inmate high on a physical and mental altering drug.

INCIDENT:

As Officer Ously was locking down Unit A-1, at USP Big Sandy, essentially isolated in the back of the unit from her partner, who was locking down a separate tier, an inmate busted out of a nearby cell, making physical and

erratic movements apparently being charged in part, by words that he was chanting. Petitioner observing the inmate's physical and mental state, and seeing that Officer Ously was near, Petitioner kept an eye on what was evolving. Officer Ously attempted to lock the inamte in his cell, however, the inmate bursted back out of his cell causing the metal door to hit Ously. Ously then ordered the inmate to go back in his cell so that she could secure the scene, but instead the inmate proceeded with an attack against Ously by lunging at her throat with both hands. Petitioner, observing this, jumped off the top tier, to the bottom tier, to save Ously and with the help of a few other inmates forcefully subdued the assaulting inmate until other officers arrived. What is notable, is the fact that these institutions are separated by geographical groups, gangs, and racial ethnicities, and by Petitioner sub-duing the inmate who was from another group than his, he had put his life further in danger, and moreover, because of a so-called inmate code against saving a correctional officer, Petitioner had to face the opposition of these factions.

Inititially, when the incident was occurring, and inmates from the assaulting inmate's area saw that the Petitioner was physically subduing their associate/friend, they went to physically aid the assaulting inmate against Petitioner and his associates...This type of force coming at Petitioner results in weapons being used, but time had elapsed between the alarm being initiated and other officers had arrived to secure the scene which prevented the incident from escalating.

Afterwards, through normal institutional operation the rest of the assaulting inmate's counterparts gathered in response to the physical subduing used by Petitioner against the assaulting inmate, as well as Petitioner was accosted by others concerning saving the female correctional officer, which

8

Petitioner led the way using his influence to resolve the conflict of every-one involved with a peaceful resolution at this time.

However, based on the so-called inmate code against saving a correction-al officer from another inmate's attack, word of Petitioner's assisting on saving the officer from the trauma of an assault or death has spread to other institutions, as well opinions will continue to vary at his current desig-nated institution about what had occurred and how it should be resolved.

Based on this incident and the above rehabilitative factors listed, Petitioner has demonstrated that he is not the same person he was through his involvement of the criminial conduct that has subjected him to be incarcerated. The transformation he has undergone over these past years should be a model for what a young man can accomplish, being , the desire and efforts to change from his previous mentality caused by growing up as a youth in an environment under the most difficult and seemingly hopeless circumstances that lured him down the wrong path.

To become a better person, Petitioner first sought to understand the roots of his criminality, followed by understanding the consequences of his crimes by taking the programs that teach inmates self-reflection and empathy. In other words, at no point did Petitioner let his past crimes or current circumstances define the person he wanted to become. Instead, Petitioner dug deep into his soul, taking to heart all that he has seen and experienced, all that he has lost and all that continues to dwindle away...and found that he has to break the chain of failures that were the links to the path that led him and so many others to his curent position, and worse.

Petitioner heard the cries and felt the tears of his children, and looked at life through the eyes of their dismay and saw that he was the cause of a repeated offense that permeated through his life, showing the appearance

9

in theirs, and came to a conclusion that he has to find a way to end the cycle.

Petitioner knew that the necessary changes would not come overnight, and that he would be challenged by his past, peers, and circumstances that are not in line with the progress of his changes, and has incurred a couple of institutional infractions. The infractions... all but one, stem from incidents that occurred at the latest in the year of 2019.

PETITIONER WAS SENTENCED ABOVE THE AVERAGE FOR HIS OFFENSE

Petitoner was sentenced to an unusually longer term of imprisonment statistically, as what has been compared towards the sentencing factor of his offense, reviewed by the Supreme Court, and this Circuit, for those similarly situated. The Court in, United States v. Qadar, No.00-cr-603, 2021 U.S. Dist. LEXIS 136980, 2021 WL 3087956, at 12 (E.D.N.Y. July 22, 2021), noted that the average federal murder sentence in Fiscal Year 2020 was approximately 21 years. The Court in, United States v. Tellier, No. 92-cr-86, 2022 U.S. Dist. LEXIS 84489, 2022 WL 1468381, at 4, (S.D.N.Y. 2022), noted that according to the US Sentencing Commission statistics, for Fiscal Years 2015-2020, the median sentence and length of imprisonment for murder was 240 months, and the mean sentence and length of imprisonment for murder was 262 and 263 months respectively. The Court in United States v. Cruz, 2021 U.S. Dist. LEXIS 68857 (2nd Cir. Apr. 9, 2021), in demonstrating that the defendant received an unusually long sentence found support by the fact that the national average length of a federal sentence for murder over the past decade is approximately 22 years. See U.S. Sentencing Commission, Federal Sentencing Statistics: Second Circuit Table (2011-2020)(Annual Reports); available at https://www. ussc.gov/topic/data-reports. Also see, Graham v. Florida, 560 U.S. 48, 93, 130 S. Ct. 2011, 176 L. Ed. 2d 825 (2010), that reviewed sentences

resulting from plea deals that the government entered into align with the national average for murder convictions typically receiving under 25 years in prison. Even though the Graham case is based on what constitute a cruel and unusual sentence, one of the relevant positions applicable to Petitioner's claim is that it directs courts on how to determine if a sentence suffers from diproportionality.

It notes among other factors, that in the rare case in which this threshold comparison...leads to an inference of gross disproportionality the court should then compare the defendant's sentence with the sentences received by other offenders in the same jurisdiction, and with the sentences imposed for the crime in other jurisdictions.

In Petitioner's case, he pled guilty pursuant to a Rule 11 plea agreement to, Count Six of the charged indictment, 18 U.S.C. 924(c)(1)(A)(iii) & 2. However, Petitioner was not sentenced pursuant to the statutory offese, instead the government oddly looked at the conduct of the underlying offense and claimed that it was more serious than the statutory conviction. The government sought and procured a 30 year sentence against Petitioner based on the conduct of the offense...being, his participation in the murder of Nelson Dubon.

Statistically for this Circuit, and other federal circuits, Petitioner is serving an unusually long sentence based on a gross disproportionality of 10 years, or more, for the average federal murder sentence...Moreover, a sentence not supported by the statutory provision, but instead the government's theory of the event that took place.

SUPPORTING CASE FOR RELIEF

Findings by judges in this Circuit that Post-conviction rehabilitation can mitigate in favor of relief for incarcerated persons convicted of

11

even the most serious of offenses is not anomalous, notable: <u>Reynolds v. United States</u>, no. 99-cr-520 (NGG), 2022 WL 1444167, at 7 (E.D.N.Y. May 6, 2022)(42 year sentence reduced to 30 years, and he had plead guilty to personally committing two murders, among other conduct) <u>United States v. Burrell</u>, No. 97-cr-998-01 (RJD), 2020 WL 5014783, at 9 (E.D.N.Y. August 25, 2020) (reducing two life sentences to 30 years for defendant convicted of CCE); <u>United States v. Rodriguez</u>, 492 F. Supp. 3d 306, 316 (S.D.N.Y. 2020) (defendant's life sentence, imposed instead of death for CCE/ Leadership of cocaine and heroin enterprise that carried out murders, reduced to 30 years); <u>United States v. Underwood</u>, No. 88-cr-822 (SHS), 2021 WL 3204834, at 6 (S.D.N.Y. January 15, 2021) (CCE life sentence reduced to 33 years for leader of city-wide heroin distribution network that was responsible for at least five murders); <u>United States v. Qadar</u>, No. 00-cr-603(ARR), 2021 WL 3087956, at 11 (E.D.N.Y. July 22, 2021) (life sentence reduced to 20 years for defendant convicted of ordering murder); <u>United States v. Johnson</u>, No. 48-cr-860 (7) (ARR), 2021 WL 5755047, at 5 (E.D.N.Y. December 3, 2021) (reducing 25 year sentence to 20 years for defendant convicted of murder); <u>United States v. Glynn</u>, No. 06-cr-580 (JSR), 2022 WL 562652, at 7 (S.D. N.Y. February 24, 2022) (life sentence reduced to 420 months for defendant convicted of leading, for seven years, gang that sold crack and oredered tow mruders); <u>United States v. Lake</u>, No. 98-cr-500-FB, 2022 WL 17083288, at 1 (E.D.N.Y. November 18, 2022)(reduction from 540 to 468 months for defendant convicted of Hobbs Act Robbery and implicated for murders)

CONCLUSION

WHEREFORE, based on the foregoing, Petitioner, Rashod Lewis, Prays that this Honorable Court GRANT his petition for compassionate release.

12

Respectfully submitted this_____day of _____ 2026.


Rashod Lewis
Reg. No.  77630-054
Federal Correctional Institution
P.O. Box  1009
Welch, WV  24801

13

# EXHIBIT A



## Individualized Needs Plan - Initial Classification   (Inmate Copy)

Dept. of Justice / Federal Bureau of Prisons
Plan is for inmate: LEWIS, RASHOD   77630-054

SEQUENCE: 02005575
Team Date: 10-03-2025

| | |
|---|---|
| Facility: | MCD  MCDOWELL FCI |
| Name: | LEWIS, RASHOD |
| Register No.: | **77630-054** |
| Age: | 34 |
| Date of Birth: | 07-23-1991 |

| | |
|---|---|
| Proj. Rel. Date: | 03-16-2042 |
| Proj. Rel. Mthd: | GOOD CONDUCT TIME |
| DNA Status: | BRO16025 / 05-12-2016 |

### Detainers

| Detaining Agency | Remarks |
|---|---|
| NO DETAINER | |

### Inmate Photo ID Status

| |
|---|
| No photo ID - Expiration: null |

### Current Work Assignments

| Facl | Assignment | Description | Start |
|---|---|---|---|
| MCD | SHU UNASGN | SHU UNASSIGNED | 09-17-2025 |

### Current Education Information

| Facl | Assignment | Description | Start |
|---|---|---|---|
| MCD | ESL HAS | ENGLISH PROFICIENT | 12-06-2017 |
| MCD | GED EP | ENROLL GED PROMOTE W/CAUSE | 11-15-2024 |
| MCD | GED SAT | GED PROGRESS SATISFACTORY | 06-19-2019 |

### Education Courses

| SubFacl | Action | Description | Start | Stop |
|---|---|---|---|---|
| BSY | W | GED CLASSROOM #8 A UNIT | 02-28-2024 | 09-07-2025 |
| BSY | C | BEG DRAWING;M;12:30-3:30PM;JB | 02-20-2025 | 04-26-2025 |
| BSY | C | V-VERMICULTURE | 08-26-2024 | 11-17-2024 |
| BSY | C | STOCKS AND BONDS A UNIT | 07-29-2024 | 10-25-2024 |
| BSY | W | GED-A1; M-F; 7:45-10:05 AM | 10-14-2020 | 02-28-2024 |
| BSY | C | GP GRAMMAR | 01-25-2021 | 01-25-2021 |
| BSY | C | GP ELECTORAL COLLEGE | 01-13-2021 | 01-13-2021 |
| BSY | C | GP VERMICOMPOSTING | 01-03-2021 | 01-03-2021 |
| BSY | C | GP ETIQUETTE | 12-30-2020 | 12-30-2020 |
| BSY | C | WRITING A FORMAL | 12-09-2020 | 12-09-2020 |
| BSY | C | PERSONAL GROWTH RPP6 GEN POP | 04-09-2020 | 12-02-2020 |
| BSY | C | MONEY MANAGEMENT | 11-30-2020 | 11-30-2020 |
| BSY | C | SELECTING A MAJOR & CAREER GP | 11-30-2020 | 11-30-2020 |
| BSY | C | GP BRANCHES OF GOVERNMENT | 11-30-2020 | 11-30-2020 |
| BSY | C | VOLLEYBALL 1 | 10-11-2020 | 11-07-2020 |
| BSY | C | INVESTMENT CHOICES GP | 10-30-2020 | 10-30-2020 |
| BSY | C | INCOME ANNUITIES GP | 10-23-2020 | 10-23-2020 |
| BSY | C | INCOME ANNUITIES GP | 10-19-2020 | 10-19-2020 |
| BSY | C | PERSONALITY TRAITS GP | 10-19-2020 | 10-19-2020 |
| BSY | W | GED-A3; M-F; 7:45-10:05 AM | 11-19-2019 | 10-14-2020 |
| BSY | C | LIFE LESSONS GP | 09-08-2020 | 09-08-2020 |
| BSY | C | COMMUNICATION SKILLS | 08-19-2020 | 08-19-2020 |
| BSY | C | SHOWING EMPATHY | 08-17-2020 | 08-17-2020 |
| BSY | C | WELCOME TO WORLD OF | 07-06-2020 | 08-09-2020 |
| BSY | C | HOW TO MANAGE DEBT RPP3 GP | 07-28-2020 | 07-28-2020 |
| BSY | C | PROBLEM SOLVING STRATEGIES GP | 07-28-2020 | 07-28-2020 |
| BSY | C | FIELD HOCKEY | 06-09-2020 | 07-04-2020 |
| BSY | C | ADOLESCENT DEVELOPMENT  GP | 06-30-2020 | 06-30-2020 |
| BSY | C | KEEPING IN TOUCH W/OTHERS GP | 06-19-2020 | 06-19-2020 |
| BSY | C | CAN FOOD CHANGE YOUR MOOD | 05-04-2020 | 06-06-2020 |
| BSY | C | COVID-19 INFORMATION CLASS GP | 06-04-2020 | 06-04-2020 |
| BSY | C | COMMUNITY SUPERVISION GP RPP5 | 05-12-2020 | 05-12-2020 |
| BSY | C | Y BLOOD SUGAR MATTERS RPP1 GP | 05-12-2020 | 05-12-2020 |
| BSY | C | THE HEART OF THE MATTER | 04-01-2020 | 05-02-2020 |



## Individualized Needs Plan - Initial Classification    (Inmate Copy)

Dept. of Justice / Federal Bureau of Prisons

Plan is for inmate: LEWIS, RASHOD  77630-054

SEQUENCE: 02005575

Team Date: 10-03-2025

| SubFacl | Action | Description | Start | Stop |
|---------|--------|-------------|-------|------|
| BSY | C | FINDING EMPLOYMENT RPP #2 GP | 04-29-2020 | 04-29-2020 |
| BSY | C | HOW TO MANAGE CREDIT RPP3 GP | 04-21-2020 | 04-21-2020 |
| BSY | C | FAMILY AND MONEY RPP 3 GENPOP | 04-02-2020 | 04-09-2020 |
| BSY CHG | W | GED-C6; M-F; 1:20-3:20 PM | 11-26-2018 | 11-19-2019 |
| BSY CHG | C | RPP2; FIND EMPLOYMENT SEMINAR | 09-17-2019 | 09-17-2019 |
| BSY CHG | C | RPP5;COMMUNITY SUPERVISON | 09-17-2019 | 09-17-2019 |
| BSY CHG | C | RPP 1: HEALTH PROMOTION | 09-17-2019 | 09-17-2019 |
| BSY CHG | C | RPP3;BUDGET MANAGEMENT | 09-17-2019 | 09-17-2019 |
| BSY CHG | C | RPP6: PERSONAL GROWTH SEMINAR | 09-17-2019 | 09-17-2019 |
| BSY CHG | C | RPP4;PERSONAL PLANNING SEMINAR | 09-17-2019 | 09-17-2019 |
| BSY | W | GED-B4; M-F; 11:30-1:10 PM | 01-18-2018 | 11-26-2018 |
| BRO M | C | II UNIT RESUME | 01-06-2017 | 02-02-2017 |
| BRO M | C | SHU HEALTH | 10-18-2016 | 10-20-2016 |

## Discipline History (Last 6 months)

| Hearing Date | Prohibited Acts |
|--------------|-----------------|

** NO INCIDENT REPORTS FOUND IN LAST 6 MONTHS **

## Current Care Assignments

| Assignment | Description | Start |
|------------|-------------|-------|
| CARE1 | HEALTHY OR SIMPLE CHRONIC CARE | 10-24-2017 |
| CARE1-MH | CARE1-MENTAL HEALTH | 01-05-2018 |

## Current Medical Duty Status Assignments

| Assignment | Description | Start |
|------------|-------------|-------|
| NO PAPER | NO PAPER MEDICAL RECORD | 04-17-2018 |
| REG DUTY | NO MEDICAL RESTR--REGULAR DUTY | 06-08-2017 |
| YES F/S | CLEARED FOR FOOD SERVICE | 03-08-2017 |

## Current Drug Assignments

| Assignment | Description | Start |
|------------|-------------|-------|
| DAP NO INT | DRUG ABUSE PROGRAM NO INTEREST | 03-05-2018 |
| ED FAIL R | DRUG EDUCATION FAIL-REQUIRED | 09-10-2018 |
| MAT DECL | MED ASSIST TRMT DECLINE | 07-01-2024 |

## FRP Payment Plan

| Most Recent Payment Plan |
|--------------------------|

**FRP Assignment:**    **COMPLT**    **FINANC RESP-COMPLETED**    **Start: 09-11-2020**

Inmate Decision:   **AGREED**    **$50.00**    Frequency: **QUARTERLY**

Payments past 6 months:   **$0.00**    Obligation Balance: **$0.00**

### Financial Obligations

| No. | Type | Amount | Balance | Payable | Status |
|-----|------|--------|---------|---------|--------|
| 1 | ASSMT | $100.00 | $0.00 | IMMEDIATE | COMPLETEDZ |

** NO ADJUSTMENTS MADE IN LAST 6 MONTHS **

## FRP Deposits

Trust Fund Deposits - Past 6 months:   $ N/A    Payments commensurate ?   N/A

New Payment Plan:   ** No data **

## Current FSA Assignments

| Assignment | Description | Start |
|------------|-------------|-------|
| AWARD | EBRR INCENTIVE AWARD | 10-02-2025 |
| FTC INELIG | FTC-INELIGIBLE-REVIEWED | 10-02-2025 |
| INELIG AUT | FTC-INELIGIBLE OFF CODE - AUTO | 12-17-2019 |
| N-ANGER N | NEED - ANGER/HOSTILITY NO | 09-30-2025 |
| N-ANTISO N | NEED - ANTISOCIAL PEERS NO | 09-30-2025 |

 **Individualized Needs Plan - Initial Classification   (Inmate Copy)**
Dept. of Justice / Federal Bureau of Prisons
Plan is for inmate: LEWIS, RASHOD   77630-054

SEQUENCE: 02005575
Team Date: 10-03-2025

| Assignment | Description | Start |
|---|---|---|
| N-COGNTV N | NEED - COGNITIONS NO | 09-30-2025 |
| N-DYSLEX N | NEED - DYSLEXIA NO | 05-28-2021 |
| N-EDUC Y | NEED - EDUCATION YES | 09-30-2025 |
| N-FIN PV Y | NEED - FINANCE/POVERTY YES | 09-30-2025 |
| N-FM/PAR N | NEED - FAMILY/PARENTING NO | 09-30-2025 |
| N-M HLTH N | NEED - MENTAL HEALTH NO | 09-30-2025 |
| N-MEDICL N | NEED - MEDICAL NO | 09-30-2025 |
| N-RLF N | NEED - REC/LEISURE/FITNESS NO | 09-30-2025 |
| N-SUB AB Y | NEED - SUBSTANCE ABUSE YES | 09-30-2025 |
| N-TRAUMA N | NEED - TRAUMA NO | 09-30-2025 |
| N-WORK N | NEED - WORK NO | 09-30-2025 |
| R-HI | HIGH RISK RECIDIVISM LEVEL | 09-30-2025 |

**Progress since last review**

Arrived at FCI McDowell on 9-03-2025.

**Next Program Review Goals**

Enroll and complete Money Smart by next review. Obtain your SSN card by next review.

**Long Term Goals**

Enroll and complete K2 awareness by 10/2026. Obtain your birth certificate by 10/2026.

**RRC/HC Placement**

Recommended Placement in range greater than 270 days.
Consideration has been given for Five Factor Review (Second Chance Act):
- Facility Resources : RRC in releasing area
- Offense : Offense does not preclude from RRC placment
- Prisoner : no escape history, minor history of violence of less than 5 years.
- Court Statement : No statement in J&C
- Sentencing Commission : There are no pertinent policies by the US Sentencing Commission.

Will rereview in accordance to FSA and SCA guidelines.

**Comments**

407/408 reviewed and current.
The 30-day PREA Re-assessment has been conducted. Inmate stated there are no new PREA concerns.
FSA: Ineligible
Recidivism: High
Finance/Poverty Need Screen
Is there documentation in the PSR of any of the following?
__ Any history of Bankruptcy
__ No bank account
_X_ No assets nor liabilities noted in PSR
__ Debts noted in Credit Report or other sources
__ Tax Liabilities/back taxes
__ Unpaid alimony/child support
__ other indications of lack of financial management skills (specify)
YES _XX_ NO ____ (if any of the above, check yes)
If the answer is yes, the inmate has a financial/poverty skills need.

Scored 23 points medium. 8/2025

*USP BIG SANDY – EDUCATION DEPARTMENT*

*Proudly awards a*

# Certificate of Achievement

*to*

# Rashod Lewis

*for successfully completing*

## National Parenting Program
## Phase One

*August 31, 2021*

J. R. Moore, Education Specialist

Case 1:16-cr-00311-KMW Document 610 Filed 07/08/24 Page 19 of 33

# UNITED STATES PENITENTIARY BIG SANDY, INEZ, KENTUCKY

THIS CERTIFIES THAT

## *Lewis, Rashod #77630-054*

has successfully completed the required course of study for the
Victim Impact

Given this 10 day of April, 2024

_____
A Unit Manager

_____
A-1 Counselor

# Certificate of Achievement

This certifies that

## R. Lewis

has completed the requirements for a class completion in

## CDL

and is therefore issued this certificate.
Presented by the Education Department, USP Big Sandy

April 12, 2023

Mike VanHoose ACE Coordinator

# Certificate of Completion

This certifies that

**Rashod Lewis** Register #: 77630-054

has successfully completed

**Anger Management Program**

at USP Big Sandy

August 2021

*K. Wireman, MA CTS.*

K. Wireman, Challenge Treatment Specialist



# CERTIFICATE
## of ACHIEVEMENT

THIS ACKNOWLEDGES THAT

77630-054 Lewis Rashod

HAS SUCCESSFULLY COMPLETED

**FSA/ A Matter OF Balance**

**07-07-2024**

**USP Big Sandy**

# EXHIBIT B

RIS Request: 091804          Lewis, Rashod Reg. No. 77630-054

You requested a reduction in sentence (RIS) and/or a compassionate release based on sentencing disparity among codefendants, rehabilitation and programming, extraordinary commendable acts, and sentencing factors.

Title 18 of the United States Code, section 3582(c)(1)(A), allows a sentencing court, on motion of the Director of the Bureau Of Prisons, to reduce a term of imprisonment for extraordinary or compelling reasons. BOP Program Statement No. 5050.50, Compassionate Release/Reduction in Sentence: Procedures for Implementation of 18 U.S.C. 3582(c)(1)(A) and 4205(g), provides guidance of the types of circumstances that present extraordinary or compelling reasons, such as the inmate's terminal medical condition; debilitated medical condition; status as a "new law" elderly inmate, an elderly inmate with medical conditions, or an "other elderly inmate"; the death or incapacitation of the family member caregiver of the inmate's child; or the incapacitation of the inmate's spouse or registered partner. Your request has been evaluated consistent with this general guidance.

The concerns in your request do not meet the criteria of this program. Accordingly, your RIS request is denied at this time.

If you are not satisfied with this response to your request, you may commence an appeal of this decision via the administrative remedy process by submitting your concerns on the appropriate form (BP-9) within 20 days of the receipt of this response.

_____          4/27/26
G. Queen, Warden                  Date

# EXHIBIT C



**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

June 2, 2020

**BY ECF**

Honorable Kimba M. Wood
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

RE:    *United States* v. *Rashod Lewis,* S1 16 Cr. 311 (KMW)

Dear Judge Wood:

The Government writes in opposition to the motion to vacate the defendant's conviction and sentence pursuant to 28 U.S.C. § 2255 (the "Motion"). On June 8, 2017, the defendant pleaded guilty to Count Six of the S1 superseding indictment captioned above (the "Indictment"). Count Six charged the defendant with in violation of 18 U.S.C. §§ 924(c)(1)(A)(iii) & 2, *i.e.*, the discharge of firearms in furtherance of the narcotics conspiracy charged in Count One of the Indictment,. *See* Dkt No. 63; Dkt No. 182-2 (transcript of plea before the Hon. Gabriel W. Gorenstein).

The Motion's sole basis for relief is founded on a mistaken reading of the Supreme Court's ruling in *United States v. Davis,* 139 S. Ct. 2319 (2019), which held that Section 924(c)(3)(B), the so-called "residual" or "risk-of-force" clause, is unconstitutionally vague in describing predicate acts for § 924(c) charges. However, the Supreme Court's ruling in *Davis* has no applicability to this case. As the plain text of Count Six of the Indictment makes clear, Lewis was charged and convicted under § 924(c) on the basis of firearms offenses committed in relation to a *narcotics trafficking offense* (that charged in Count One), not an offense defined as a "crime of violence" pursuant to the "residual clause."

Lewis, therefore, describes no Constitutional or other error in his plea, sentence, or judgment warranting relief under § 2255. The Government respectfully requests that the Motion be denied.

Respectfully submitted,

GEOFFREY S. BERMAN
United States Attorney

by: __/s/_____
Andrew C. Adams
Assistant United States Attorney
(212) 637-2340

Dear Kimba Woods,

Life is full of Blessings and Lessons. I hope this letter reaches you in good health and blessings.

The reality of life is that "People Change". Time changes people, Prison changes people. Years of reflection, discipline, programming, faith, hardship and growth can transform a person in ways no sentencing Judge could have fully seen at the time of conviction. I ask myself whether the person now, before is the same person who stood in that courtroom years ago. That is why "Second Chances" do not usually come to those who simply waits. They come to those who act. When I got incarcerated, I was 24 years old and mentally, my mind werent fully developed where I made "Bad Decisions", no excues for my actions due to that I've taken full responsibility for what I am convicted too. I was sentenced to 360 months to the F.B.O.P. at the age of 26 years old. I was sent to a United States Penitentiary Big Sandy. I was there for 7 years and 8 months. So many trails and tribulatons, at first, I was struggling with disconutity. Being other centered, intergity.

I was angry for growing up with no father figure, proverty. Seeing my mother struggling, I felt like life wasn't fair.

But everything changed, for the better. I am more matured. I've change the way I use to think. My thoughts went from being negative to being positive. I've learned growth, patiance and happiness. I started programming, anger management, victim impact, G.E.D. and so many other programs. I even became a mentor and started teaching the "Victim Impact". I started reading "self-help" books. Started to be there for my family more to my best abilities. I even saved a female staff in March 11, 2024 in Unit A-1 at 8:25 pm from being assualted by another inmate, which a lot of people (other inmates) do no "like". I got stabbed twice in my back and almost been paralyzed by getting hit on my spine.

But I do not regret what I have done because of the person I have now become, the way I think. That could've been my mother, sister, childs mother etc, etc... Im trying my best to remain humble at all times.

Now Im m a F.C.I medium and I brought my recidivism down. I got over a decade m and Im 34 years old soon to be 35. I not that little angry boy anymore, I am a grown man. I have changed for the better, a second chance is not just about filling out forms, its about telling your story in a way that command attention. It is about showing not only what happened in the past, but who you are now. It is about demonstrating rehabilitation, growth, change circumstances, excessive punishment, sentencing disparity or other grounds for relief in a way that speaks to the people making decisions today. Second chances are real, but they rarely come to those who do nothing. Miss Woods, Im asking for a second chance to be there for my family. I deserve it. I feel like it does not take 30 years to learn my lessons. Trust me, I have changed and my compassion release will show you, who I am today. I have plans to make sure I dont ever come back to prison, to leave my kids fatherless. My mother is 67 years old with O.C.P.D. and she needs me now more than ever.

Please find it in your heart to take my motion and my letter in consideration for a second chance. One of my plans when I get out is to be an activist, talking to the youth, elementary, middle school, high school and colleges. Telling them my story to help them to think positive, help them with being more aware of what will happen if they go down the wrong road. My first job application is going to be "Sanitation", because I have 5 years working experience as a "Trash Orderly". I also have a certificate for my C.D.L. A decade in prison is a long time and I'm ready for society.

I'm ready to show the world the Man, I have become and especially my family. I promise you will not regret it. Please and Thank You.

Sincerely,



**Retail**

USPS
UNITED STATES
POSTAL SERVICE®

RDC 99

10007

**U.S. POSTAGE PAID**
FCM LG ENV
WELCH, WV 24801
JUN 15, 2026

**$0.00**

R2305K141309-09

Southern District of New York
- The Silvio J. Mollo Building -
    One Saint Andern's Plaza
500 Pearl Street
New York, NY   10007



CERTIFIED MAIL®

PLACE STICKER AT TOP OF ENVELOPE TO THE RIGHT
OF THE RETURN ADDRESS, FOLD AT DOTTED LINE

7022 2410 0001 4515 7216