

U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

*Jacob K. Javits Federal Building*
*26 Federal Plaza, 37th Floor*
*New York, New York 10278*

July 27, 2026

**BY ECF**
The Honorable Kimba M. Wood
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

Re:    *United States v. Rashod Lewis*, 16 Cr. 311 (KMW)

Dear Judge Wood:

The Government respectfully writes in opposition to defendant Rashod Lewis's *pro se* motion for a sentence reduction under 18 U.S.C. § 3582(c)(1)(A), which was docketed on July 8, 2026. (Dkt. 610 (the "Motion").) In his Motion, Lewis offers four bases to support his request for a sentence reduction: (i) he believes his sentence is longer than that of his co-defendant, Kenneth Rudge; (ii) he argues that he has been rehabilitated and has participated in educational programming; (iii) he highlights his actions in purportedly saving a correctional officer from being attacked by another inmate; and (iv) he points to his above-average sentence as compared to the national average for murder. None establish "extraordinary and compelling reasons" for his early release. Further, the sentencing factors under 18 U.S.C. § 3553(a) do not warrant a reduction.

Lewis pleaded guilty to a serious narcotics offense and admitted that he was one of the shooters in a murder in furtherance of a narcotics conspiracy. He has served just over 10 years of his 30-year sentence. The sentence that Lewis received is commensurate with the seriousness of his conduct and the need to deter similar dangerous conduct. Accordingly, the Court should deny his Motion.

## BACKGROUND

### A.    The Offense Conduct

Between 2012 and 2016, a group of young men and women living in the vicinity of East 188th Street and Webster Avenue in the Bronx, and referring to itself as "YNR," engaged in a conspiracy to distribute crack cocaine and heroin to addicts in that area. (PSR ¶¶ 2, 19, 23, 26.) Lewis was a critical member of YNR, responsible for supplying narcotics to lower-level members. (PSR ¶ 23.) For years, the gang, including Lewis and those supplied by Lewis, sold personal-use quantities of crack to large numbers of individual customers every day. (PSR ¶ 23; Dkt. 241 at 1–2.)

To sustain their drug business, Lewis and other members of YNR, resorted to violence, including shootings and robberies targeting rival narcotics traffickers. (PSR ¶ 24.) On January 21, 2016, that violence turned deadly. (PSR ¶¶ 24–28.)

That afternoon, Lewis and other YNR members attempted an armed "push-in" robbery of a marijuana dealer located on Marion Avenue in the Bronx. (PSR ¶ 26.) But they abandoned the robbery when they couldn't breach the dealer's door. (PSR ¶ 26.) Still intent on resupplying YNR's drug stash, a member of the group asked another drug dealer, known as "Lefty," to front them narcotics. (PSR ¶ 26.) When Lefty refused, Lewis and his associates decided to rob him instead, knowing he often sold heroin and crack out of a particular bodega. (PSR ¶¶ 26–27.) Before leaving for the bodega, Lewis retrieved ski masks and several firearms, including a Mac-11 machine gun. (PSR ¶ 26.)

In the bodega, Lewis confronted Lefty and again demanded narcotics. (PSR ¶ 27.) When Lefty refused, Lewis opened fire, either missing Lefty or hitting him without killing or incapacitating him. (PSR ¶ 27.) Lewis and others then searched Lefty for drugs and cash. (PSR ¶ 27.) They found no drugs, but they stole his wallet and coat. (PSR ¶ 27.) Meanwhile, the rest of the YNR crew was busy robbing other people in the bodega. (PSR ¶ 28.) After holding up Lefty, Lewis came to assist his peers subdue Nelson Dubon, who was resisting the robbery. (PSR ¶ 28.) Lewis shot Dubon in the upper leg, and another YNR member, Kenneth Rudge, shot Dubon in the torso. (PSR ¶ 28.) Dubon died from his gunshot wounds shortly thereafter. (PSR ¶ 28.)

## B.    Procedural History

On June 8, 2017, Lewis pleaded guilty to using, carrying, possessing, and discharging firearms during and in relation to, and in furtherance of, a drug trafficking crime, namely a conspiracy to distribute and possess with the intent to distribute narcotics, in violation of 18 U.S.C. § 924(c)(1)(A)(iii) and 2. (Dkt. 188.) Under the plea agreement, the defendant stipulated to a United States Sentencing Guidelines ("Guidelines") range of 360 months' to life imprisonment, based on the application of the first-degree murder Guideline under U.S.S.G. § 2A1.1(a). (PSR ¶ 13.)

On October 30, 2017, the Court sentenced Lewis to 360 months' imprisonment and five years' supervised release. (Dkt. 282.) Lewis timely appealed, arguing, among other things, that the judge failed to fully explore the ramifications of his plea agreement's appellate waiver and, as such, his waiver was not knowing and voluntary. (Dkt. 261.) The Second Circuit affirmed Lewis's conviction on August 23, 2018. *United States v. Lewis*, 735 F. App'x 28 (2d Cir. 2018).

On April 8, 2020, Lewis filed a *pro se* motion seeking to vacate his conviction and sentence under 28 U.S.C. § 2255, (Dkt. 417), and on April 27. 2021, the Court denied the motion, (Dkt. 475). Lewis appealed, and on December 29, 2021, the Circuit dismissed the appeal because he had not "made a substantial showing of the denial of a constitutional right." (Dkt. 522.)

## C.    Lewis Motion for a Reduction in Sentence

On May 28, 2026, the Court docketed a letter from Lewis seeking the appointment of counsel to "help[] [him] finish [his] motion for 'Compassion[ate] Release.'" (Dkt. 607.) On July 8, 2026, Lewis filed his *pro se* motion for a sentence reduction. (Dkt. 610.) Lewis filed various

exhibits to his motion, including a letter from the Warden of his prison, dated April 27. 2026, denying his motion for compassionate release.[1] (Dkt. 610, Ex. B.) According to the BOP, Lewis is currently incarcerated at FCI McDowell in West Virginia with a projected release date of April 12, 2042.[2]

## APPLICABLE LAW

"A prison sentence, once imposed, usually cannot be modified by the district court. 18 U.S.C. § 3582(b). But Congress has established several narrow exceptions to this rule." *Rutherford v. United States*, 146 S. Ct. 1320, 1326 (2026). Under 18 U.S.C. § 3582(c)(1)(A), a court may grant a sentence reduction (also referred to as "compassionate release") if the following four conditions are met: "(1) a defendant has exhausted all administrative remedies with the BOP, (2) extraordinary and compelling reasons warrant such a reduction, (3) the reduction is consistent with applicable policy statements issued by the Sentencing Commission, and (4) the reduction is supported by the factors set forth in 18 U.S.C. § 3553(a), to the extent they apply." *United States v. Stillwell*, 13 Cr. 521 (RA), 2026 WL 276018, at *3 (S.D.N.Y. Feb. 3, 2026) (footnotes and internal quotation marks omitted).

The United States Sentencing Commission is responsible for "describ[ing] what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." 28 U.S.C. § 994(t). Section 1B1.13 of the Guidelines, as amended, sets forth what circumstances, "singly or in combination," constitute extraordinary and compelling reasons for release. *United States v. Corbett*, 10 Cr. 184 (PAE), 2023 WL 8073638, at *6 (S.D.N.Y. Nov. 21, 2023); *United States v. Moslem*, 19 Cr. 547 (CS), 2024 WL 4558073, at *1 n.1 (S.D.N.Y. Oct. 21, 2024) (agreeing that "to grant a motion for compassionate release, a court must now, in addition to finding that the other elements of the compassionate release standard are satisfied, also find that granting such relief is consistent with Policy Statement 1B1.13" (citing *United States v. Feliz*, 16 Cr. 809 (VM), 2023 WL 8275897, at *4 (S.D.N.Y. Nov. 30, 2023)).

"In enacting § 3582(c)(1)(A), Congress did not authorize district courts to take a second bite at the sentencing apple. Rather, compassionate release is a limited, discretionary exception to the default rule that a federal defendant will serve his entire sentence." *United States v. Bryant*, 144 F.4th 1119, 1127 (9th Cir. 2025) (citing *Dillon v. United States*, 560 U.S. 817, 819 (2010)). Indeed, "[o]ur justice system relies on the finality of criminal judgments." *Id.* at 1123. Furthermore, because "extraordinary and compelling reasons" and the § 3553(a) analysis are independent requirements, a district court may "den[y] a defendant's motion under § 3582(c)(1)(A) in sole reliance on the applicable § 3553(a) sentencing factors" without "determin[ing] whether the defendant has shown extraordinary and compelling reasons that might (in other circumstances) justify a sentence reduction." *United States v. Keitt*, 21 F.4th 67, 73 (2d Cir. 2021); *see also United States v. Halvon*, 26 F.4th 566, 571 (2d Cir. 2022); *United States v. Jones*, 17 F.4th 371, 374 (2d Cir. 2021). That is, a "district court's reasonable evaluation of the Section 3553(a) factors is an alternative and independent basis for denial of compassionate release." *Jones*, 17 F.4th at 374 (internal quotation marks omitted); *see also United States v.*

---

[1] As such, Lewis has satisfied his exhaustion requirement under 18 U.S.C. § 3582(c)(1)(A).

[2] *See Find an inmate.*, Fed. Bureau of Prisons, https://www.bop.gov/inmateloc/

*Rodriguez*, 147 F.4th 217, 222 (2d Cir. 2025) ("If the court determines that the § 3553(a) factors weigh against a sentence reduction, it may deny the motion on that basis alone.").

The defendant bears the burden of proving entitlement to the requested relief under Section 3582. *See United States v. Butler*, 970 F.2d 1017, 1026 (2d Cir. 1992) ("A party with an affirmative goal and presumptive access to proof on a given issue normally has the burden of proof as to that issue."); *United States v. Ebbers*, 432 F. Supp. 3d 421, 426 (S.D.N.Y. 2020) ("The defendant has the burden to show he is entitled to a sentence reduction."); *United States v. Givens*, 14 Cr. 546 (CM), 2020 WL 4699042, at *2 (S.D.N.Y. Aug. 13, 2020) (similar). The Second Circuit has described an "extraordinary" reason in several ways, including as "most unusual," "far from common," "ha[ving] little or no precedent," "beyond or out of the common order," "remarkable," and "synonymous with 'singular.'" *United States v. Fernandez*, 104 F.4th 420, 428 (2d Cir. 2024) (internal quotation marks omitted); *see also Rutherford*, 146 S. Ct. at 1330. The Second Circuit has also described a "compelling" reason as "both powerful and convincing." *Fernandez*, 104 F.4th at 428 (internal quotation marks omitted); *Rutherford*, 146 S. Ct. at 1330; *see also United States v. Balouchzehi*, 21 Cr. 658 (JMF), 2026 WL 205520, at *1 (S.D.N.Y. Jan. 27, 2026). As the Supreme Court recently explained, "[p]utting these definitions together, 'extraordinary and compelling' reasons for compassionate release are those that are especially unusual and convincing." *Rutherford*, 146 S. Ct. at 1330. Finally, as noted above, a motion for compassionate release is "not an opportunity to second guess or to reconsider the sentencing court's original decision." *United States v. Roney*, 833 F. App'x 850, 854 (2d Cir. 2020) (internal quotation marks omitted).

## ARGUMENT

### I. Lewis Has Not Shown Extraordinary and Compelling Reasons for a Reduced Sentence.

The Court should deny Lewis's request for a sentence reduction because he has not shown any "extraordinary and compelling" reasons for a reduced sentence. Lewis offers four bases for his request and attaches to his Motion records from his time in custody, most of which document his completion of educational programming. Because Lewis fails to offer any "extraordinary and compelling" reason for his early release, the Court should deny his Motion.[3]

#### A. Lewis is not eligible for a sentence reduction because of a purported disparity between his sentence and that of his co-defendant, Kenneth Rudge.

Lewis argues that he is entitled to a sentence reduction because his sentence is purportedly disproportionate to that of his co-defendant, Kenneth Rudge. According to Lewis, his 30-year

---

[3] The Government has attempted to construe the Motion liberally in order to respond to all possible arguments that it raises. *See Stillwell*, 2026 WL 276018, at *3 (explaining that, for *pro se* defendant, "the Court will review his submissions with 'special solicitude' and will construe them 'liberally' and interpret them 'to raise the strongest arguments that they suggest'" (citing *Bloodywone v. Bellnier*, 778 F. App'x 52, 53 (2d Cir. 2019)). If the Court believes that Lewis has raised some other argument that the Government has not responded to, the Government would welcome the opportunity to submit supplemental briefing.

sentence for violating 18 U.S.C. § 924(c)(1)(A)(iii) ("Section 924(c)") created a "drastic disparity" because Rudge received only a 10-year sentence on the same count. (Motion at 4.)

Lewis's argument fails because he and Rudge were not similarly situated at sentencing. As the Second Circuit recently explained, "[t]here is nothing extraordinary and compelling about different sentences being imposed on differently situated defendants." *United States v. Seabrook*, 23-6279, 2025 WL 3484616, at *3 (2d Cir. Dec. 4, 2025); *see Fernandez*, 104 F.4th at 428 ("Disparities between the sentences of coconspirators can exist for valid reasons." (internal quotation marks omitted)). That is exactly the situation here.

Lewis compares his total sentence to the sentence Rudge received on only one Section 924(c) count. But Rudge was convicted of two Section 924(c) counts, not one, and the Court sentenced him on both. (Dkt. 367.) Looking at only one of those counts ignores the full sentence imposed by the Court. In total, the Court sentenced Rudge to 35 years' imprisonment—10 years on one Section 924(c) count, and 25 years on the second—which is 5 years longer than Lewis's 30-year sentence. Lewis therefore did not receive a harsher punishment for the underlying criminal conduct. To the contrary, he received fewer convictions and a shorter sentence.

Lewis's and Rudge's different aggregate sentences is a product of their different convictions and different stipulated Guidelines ranges. (*Compare* Dkt. 188 at 9 (noting that Lewis's stipulated Guidelines range was 360 months to life imprisonment), *with* Dkt. 369 at 3 (noting that Rudge's stipulated Guidelines sentence was 420 months' imprisonment)). Those are precisely the kind of "valid reasons" that *Fernandez* recognizes. 104 F.4th at 428.

B.     **Lewis is not eligible for a sentence reduction due to good conduct while imprisoned or the claim that he has been rehabilitated.**

Lewis next argues that he should receive a sentence reduction because he has rehabilitated himself while incarcerated. He points to the many educational programs he has completed while in custody—including courses directed at personal growth and financial planning—and contends that he has worked hard to become a productive member of society. (Motion 6–7.) Although Lewis touts his completed coursework, he concedes that his disciplinary record does not perfectly match the progress he claims to have achieved. (Motion at 10.) He nevertheless asserts that he has incurred only one infraction since 2019. (Motion at 10.) The record proves otherwise. Rather than supporting release, Lewis's record in custody weighs against it.

As an initial matter, Lewis's checkered disciplinary record undermines his claim of rehabilitation. Records obtained from the Bureau of Prisons show that Lewis has been sanctioned eight times while incarcerated, including three disciplinary incidents after 2019. (*See* Ex. A.) Those incidents include four fights and one instance each of possessing alcohol or drugs, assault without serious injury, possessing a dangerous weapon, and refusing to work and obey an order. That pattern of misconduct is difficult to square with Lewis's claim that he is rehabilitated and ready to return as a productive member of society.

In any event, "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason" for a sentence reduction. 28 U.S.C. § 994(t); *see Stillwell*, 2026 WL 276018, at *5 (explaining that "a productive institutional record while incarcerated is what is expected and is not a basis for a sentence reduction" (alternations and internal quotation

marks omitted). Although a court may consider rehabilitation alongside other circumstances, Lewis identifies no additional extraordinary and compelling reason that would warrant relief here. *See United States v. Frazier*, 17 Cr. 364 (CS), 2023 WL 2139520, at *1 (S.D.N.Y. Feb. 21, 2023) ("[M]aintaining good conduct in prison is not uncommon, and indeed is expected." (footnote omitted)); *see also United States v. Bennett*, 15 Cr. 95 (JPC), 2022 WL 3445349, at *3 (S.D.N.Y. Aug. 17, 2022) ("[The defendant's] lack of disciplinary record and good behavior during his imprisonment [is not] a basis to grant compassionate release.").

Nor does Lewis's participation in prison programming change this analysis. District courts in this Circuit have consistently held that participation in educational and vocational programs— though commendable—does not, by itself, constitute an extraordinary and compelling reason for compassionate release. *See, e.g.*, *United States v. Corbett*, 10 Cr. 184 (PAE), 2023 WL 8073638, at *7 (S.D.N.Y. Nov. 21, 2023) ("[The defendant's] participation in programming does not make out an extraordinary circumstance."); *United States v. Needham*, 06 Cr. 911 (AKH), 2022 WL 19769, at *4 (S.D.N.Y. Jan. 3, 2022), (finding rehabilitation through prison programming does not rise to the level of an extraordinary and compelling reason for early release), *aff'd*, 22-253, 2023 WL 2172382 (2d Cir. Feb. 23, 2023); *United States v. Bolden*, 15 Cr. 466 (VB), 2021 WL 242551, at *2 (S.D.N.Y. Jan. 25, 2021) ("[P]articipation in or completion of [programming], while laudable, is not an extraordinary and compelling reason warranting a compassionate release."); *United States v. Reyes*, 91 Cr. 358 (KPF), 2020 WL 5518483, at *3 (S.D.N.Y. Sept. 14, 2020) (finding completion of "dozens" of prison-provided programs and attainment of GED, without more, did not support compassionate release).

## C. Lewis is not eligible for a sentence reduction for purportedly saving a correctional officer from attack.

Lewis next argues that he deserves a sentence reduction because he purportedly "saved a female correctional officer—Officer Ousl[e]y—from an assault or death by a deranged inmate high on a physical and mental altering drug." (Motion at 7.) If true, that conduct is unquestionably commendable. But the Guidelines define "extraordinary and compelling" circumstances narrowly, and such conduct does not fall within those definitions. Under U.S.S.G. § 1B1.13(b), courts may consider a defendant's (1) medical circumstances, (2) age, (3) family circumstances, (4) history of abuse, or (5) whether the defendant is serving an unusually long sentence. Courts may also consider other reasons that "are similar in gravity" to the factors described in (1) through (4) above. *Id.* § 1B1.13(b)(5). Because assisting a correctional officer to defend herself is neither among the enumerated criteria nor similar in gravity to any of them, Lewis cannot meet the extraordinary and compelling standard. That issue alone defeats Lewis's claim.

In any event, the extent of Lewis's proclaimed heroism remains uncertain. According to a Bureau of Prisons Incident Report (the "Report"), Lewis was not among the inmates seen on surveillance video intervening in the attack. And unlike others, Lewis did not claim to have intervened in his post-incident interview.[4] The record therefore leaves unclear what role, if any, Lewis played in assisting Officer Ousley.  But even if Lewis were involved, "district courts do not

---

[4] Because the relevant portions of the Report contain sensitive information, the Government has not filed it on the public docket. If reviewing the Report would be helpful to the Court, the Government is prepared to provide an unredacted copy to the Court under seal.

grant requests for compassionate release based on a single heroic act by itself." *United States v. Collins*, 10 Cr. 466 (SAL), 2023 WL 3477241, at *4 (D.S.C. May 16, 2023), *aff'd*, 23-6520, 2024 WL 5135608 (4th Cir. Dec. 17, 2024).

    **D.  Lewis is not entitled to a sentence reduction because he was sentenced above the national average for his offense.**

Finally, Lewis argues that his sentence is "unusually long" because it exceeds the average federal sentence imposed for murder convictions. (Motion at 10.) He points to various sentencing statistics showing that the average federal sentence for murder has ranged from approximately 20 to 22 years, depending on the time period, between 2011 and 2022. (*See* Motion at 10 (collecting cases and statistics).) But any statistic, standing alone, says little about whether Lewis's sentence is unusually long.

Here, Lewis's sentence was tailored to his circumstances and properly reflected the extraordinarily violent nature of his conduct, which includes an extensive history of possessing and using firearms. For example, in 2015, Lewis and members of the MacBallas street gang (a larger gang with which Lewis and other members of YNR were affiliated) violently robbed a marijuana stash house, during which one of Lewis's cohorts pistol-whipped the victim. (PSR ¶ 24.) Also in 2015, Lewis participated in a shootout with members of a local rival drug crew, firing weapons on a public street. (PSR ¶ 24.) On January 21, 2016, Lewis and other members of YNR attempted a "push-in" robbery of yet another marijuana dealer, while Lewis and his co-conspirators were carrying loaded firearms. (PSR ¶¶ 24, 26.) And after that attempted robbery failed, Lewis began planning the robbery that ultimately resulted in Nelson Dubon's murder. (PSR ¶¶ 24–25.)

At sentencing, the Court was at a loss of words in describing the violent nature of Lewis's criminal conduct, stating "I find that the offense is so serious that it's hard to describe." (Dkt. 262 at 14.) The Court went on to explain that murder "is as serious as things get" and that gun violence "is a scourge on the community." (Dkt. 262 at 14.) That remains true today.

Against this backdrop, Lewis's sentence is not unusually long. It reflects the seriousness of his offense, his repeated possession and/or use of a firearm, and persistent pattern of violent criminal conduct. *See United States v. Santos*, 01 Cr. 537 (ARR), 2024 WL 4212024, at *1 (E.D.N.Y. Sept. 17, 2024) (rejecting a similar argument where the defendant relied on average federal sentences because the defendant's "crime was especially severe, and a life sentence reflect[ed] the seriousness of [the defendant's] offense, regardless of the average sentence for a 'similar' crime"), *reconsideration denied*, 01 Cr. 537 (ARR), 2024 WL 4424418 (E.D.N.Y. Oct. 4, 2024), *aff'd*, 24-2672, 2026 WL 682313 (2d Cir. Mar. 11, 2026); *United States v. Stewart*, 02 Cr. 1435 (LAP), 2025 WL 89298, at *7 (S.D.N.Y. Jan. 14, 2025) (denying compassionate release and finding life sentence appropriate for murder conviction).

**II.    The Section 3553(a) Factors Weigh Decisively Against a Sentence Reduction.**

Even if Lewis could show extraordinary and compelling reasons for a sentence reduction (and he cannot), the Section 3553(a) factors weigh decisively against one. *See Rutherford*, 146 S. Ct. at 1333 ("Before determining the extent of a reduction based on the § 3553(a) factors, a court must first ensure that a movant is part of the 'limited class of prisoners' who are 'eligibl[e]' for

such a reduction." (citing *Dillon*, 560 U.S. at 825, 827)). At sentencing, the Court determined that, after weighing the Section 3553(a) factors, Lewis should be imprisoned for a period of 30 years. (Dkt. 282 at 15.) Less than nine years later, that analysis should remain the same. The seriousness of the offense conduct, Lewis's history and characteristics, the need for specific deterrence, the need to promote respect for the law, the need to protect the public from Lewis's future crimes, and the other purposes of sentencing outlined in Section 3553(a) all counsel strongly against releasing Lewis or reducing his sentence.

*First*, the "nature and circumstances of the offense" here are extremely serious and weigh heavily against a sentence reduction. 18 U.S.C. § 3553(a)(1). Lewis was a shooter in the murder of Nelson Dubon in furtherance of a long-term drug conspiracy. While this was the only murder in this case, it was far from the only violent incident. Lewis had a history of gun possession and carried guns in shootouts with rival drug dealers, including earlier in the day of Mr. Dubon's murder. His offense conduct is simply among the most serious that can possibly come before the Court. That factor alone thus weighs decisively against any sentence reduction.

*Second*, Lewis's history and characteristics, and particularly his criminal history, further counsel against the granting of a sentence reduction. As the Government explained at sentencing, Lewis was a central member of YNR, responsible for supplying crack and heroin to younger dealers and for promoting his crew's success through deadly violence. (Dkt. 241.) In 2005, nearly eleven years before his murder of Mr. Dubon, Lewis and a friend attempted to rob a victim at gun and knife point; he was sentenced to 18 months' probation. (PSR ¶ 49.) Shortly thereafter, Lewis pleaded guilty to disorderly conduct in connection with his possession of crack and a stolen motorcycle; he received a conditional discharged. (PSR ¶ 50.) Less than one year later, Lewis committed another robbery in which he and others bloodied a victim in order to steal approximately $40. (PSR ¶ 51.) In 2009, Lewis again robbed a victim for cash and jewelry. (PSR ¶ 53.) These incidents were interspersed with narcotics dealing, and each preceded the escalation in violence and volume of drug sales that culminated in the death of Mr. Dubon in 2016. That history underscores both the need to deter Lewis from committing additional crimes and to protect the public from his future crimes.

In short, the Section 3553(a) factors that the Court applied in 2017 remain firmly applicable here. The Court imposed a 30-year sentence in this case after careful consideration of the Section 3553(a) factors. Given the seriousness of Lewis's criminal conduct and the fact that Lewis has served just over ten years of his sentence, compassionate release is not in the interests of justice. Releasing Lewis after he has served just over one-third of his original sentence would undermine respect for the law and utterly fail to account for the seriousness of his offense conduct. Thus, even if Lewis could demonstrate extraordinary and compelling circumstances, this Motion should be denied. Indeed, "[t]o substantially reduce the sentence would neither be just nor promote respect for the law; if anything, it would promote disrespect for the law." *United States v. Rodriguez-Francisco*, 13 Cr. 233 (VB), 2021 WL 326974, at *3 (S.D.N.Y. Feb. 1, 2021). Accordingly, the Court should deny the defendant's Motion because any other result would be inconsistent with the Section 3553(a) factors.[5]

---

[5] The defendant also moves for appointment of counsel. (Dkt. 607.) "For a compassionate release motion . . . , it is within the district court's discretion whether to appoint counsel." *United States v. Piña*, 01 Cr. 619 (VM), 2021 WL 364192, at *1 (S.D.N.Y. Feb. 3, 2021). The Court should deny

## CONCLUSION

For the foregoing reasons, the Court should deny the Motion.[6]

Respectfully submitted,

JAY CLAYTON
United States Attorney

By: *Andrew Lief*

Andrew I. Lief
Assistant United States Attorney
(212) 637-0083

cc:    Defendant (by U.S. Mail)

---

that motion because the defendant "proffers no legal or factual issues which necessitate further development by counsel on his behalf." *United States v. Hoti*, 15 Cr. 651 (LTS), 2021 WL 2581670, at *4 (S.D.N.Y. June 23, 2021) (denying motion for appointment of counsel and sentence reduction).

[6] The Government also respectfully submits that, if the Court is inclined to grant Lewis's motion, it should first provide an opportunity for any victim(s) of Lewis's crime to be heard. Under the Crime Victims' Rights Act, victims have "[t]he right to be reasonably heard at any public proceeding in the district court *involving release*, plea, *sentencing, or any parole proceeding*." 18 U.S.C. § 3771(a)(4) (emphases added); *see also* Fed. R. Crim. P. 60(a)(3). Although the Court may decide this motion without holding a "public proceeding," the Government submits that, at least in this circumstance, effectuating fully the purpose of the statute—particularly in light of its references to "release," "sentencing," and "parole proceedings"—counsels in favor of affording victims the ability to be heard. Furthermore, Section 3582(c) appears to contemplate considering the view of victims, because it authorizes the Court to grant compassionate release only "after considering the factors set forth in section 3553(a)." 18 U.S.C. § 3582(c)(1)(A) and (2). As the Court knows, § 3553(a) lists among sentencing factors: "the nature and circumstances of the offense," which often involve harm to victims, as well as "the need to provide restitution to any victims of the offense." *Id.* § 3553(a)(1), (7). Unless victims are permitted to make their views known, the Court will not have as full an understanding of the nature of the offense, the injury it caused to other people, and whether those people have been made whole. If the Court so requests, the Government will endeavor to contact any victims promptly and advise them that they may be heard on this motion.